All right, we have one case this afternoon, United States v. Nair. I understand both sides are ready. Okay, you can proceed. May it please the court, my name is Laura Berger and I represent the appellant Patrick Nair here today. It's now clear that the laptop was searched before a search warrant and without valid consent and we only know this because the parties engaged in intensive fact-finding after this court remanded following Mr. Nair's first appeal. Given the extreme opaqueness of the factual record previously at the time of trial, at least from the perspective of the defense, it is not reasonable for the district court to have applied waiver principles and to preclude Nair from challenging the admission of the laptop at this time. This fourth amendment challenge should be heard on the merits. The laptop should have been suppressed because the independent source doctrine does not save the warrantless search. Admitting this computer evidence deprived Mr. Nair of a fair trial and this court should now vacate the judgment and remand for a new trial. The district court properly held on remand that the consent of Mr. Nair's wife was not supported by either actual or apparent authority. The district court erred, however, by applying waiver principles and relying on the independent source doctrine as an exception to the exclusionary rule. So my intent today is to focus first on the waiver issue and then on the independent source doctrine and then if there's time I'll address the consent issue. I do not intend to address the sufficiency argument that we've raised as to count five, of course, unless the court has any questions we can address any of this in any order that the judges prefer. Can I just add one thing to your agenda? Absolutely. Which is good faith, the good faith doctrine. I know it was raised towards the end of the government's papers and you address it just a tiny little bit in a sentence or two in your reply but I'm wondering if you could sort of build that in to your overall piece. Sure or we could talk about good faith right now and you know the answer to the good faith issue is nobody is arguing here that the agents operated with bad faith. Nobody's arguing that they deliberately went in and performed an illegal search but there is no requirement that there be ill intent for the fourth amendment to protect the privacy of our possessions and particularly our computers and the question here is whether what they did was reasonable and whether there is an exception that actually applies and the mere fact that there's no evidence that they acted in bad faith isn't enough to save the search. What was unreasonable about what they did? I mean they thought they had consent and then as soon as there was a question they went to the prosecutors and raised the issue. There's two issues here. The first is the premise of your question that they thought they had consent and as we argued below and as the district court ultimately found that wasn't reasonable. The agents assumed. It wasn't reasonable that they had consent but I think the district court found that but for this but for the belief that they had consent they would have gotten a warrant anyway so I'm not sure what the unreasonable conduct is there. So I think there's two parts to it and perhaps I misunderstood the import of your question. The first thing I was saying was simply that they assumed they had valid consent relying on the wife's consent but they hadn't thoroughly investigated it as the district court found. That's piece one. Piece two where I think your honor is going has to do with okay so what do you after they see what they think is child pornography, they stop, they call the AUSA and the AUSA asks them some questions and says look into this further. This is all fine and I'm not disputing that this was all done in good faith by the government and by the agents but it's what happens after that. So they find out that Ms. Nosaba's consent is not valid. She does not have authority. Nobody discloses those facts to the defense and instead they get a search warrant which they have probable cause for and it's a valid search warrant but nothing in the search warrant indicates that the computer had already been searched. Obviously they've walled off any information that got gleaned from that search from that search warrant but there's no way for the defense to know at the time of trial at the time. Did anything from that search the early search based on the consent supply a probable cause for the search warrant? It did not. It did not. Is there any argument that that somehow gave them better information that would get them a search warrant? I don't have that argument, Your Honor. There's nothing in the record that suggests that anything in the search of the computer was used in the search warrant. And there are two reasons for that. One is on its face it cites evidence for probable cause that has nothing to do with the search of the computer and the second is the government has told us and we have stipulated below that the agent who did that search did the initial warrantless search was walled off from the search warrant application. So the answer candidly to your question is no. But that's the second prong of Johnson. The district found that if you took in essence that if you took the consent out of the picture completely and there was no consent the government surely would have asked for a warrant and as you have gotten the warrant. And isn't that the essence of the independent source doctrine? Not under Johnson. Not under Johnson, Your Honor. The question is there's two prongs under Johnson and one is did they independently have a reason have or have a basis for getting the warrant. But the other one is did something that happened in the search cause them to get a warrant and here it clearly did. They clearly were prompted by what they saw on the computer. And we don't know. Where you're assuming, Your Honor, and maybe perhaps it's fair. Prompted them to go ask for a warrant but not in the sense that in the probable cause sense. It was more in the sense of we better check to see whether the consent is genuine. That's the prompting. Would you agree with that? I would largely agree with that. We have the benefit of stipulated facts and it's not so much whether the consent is valid. It's that there was a real concern once the factual record was more thoroughly developed that the consent wasn't valid. The agents were acting in a diligent manner. I mean there was a question and rather than just plow forward they decided to check. But here, Your Honor, we have a situation where Mr. Nayar is being found to have waived an argument and he's being found to have waived an argument where he had no reason to know any of these facts. Even at the time of trial. But if we find an independent source then the waiver doesn't matter, right? It does. That's true. That's true. I have two hurdles to overcome. What about the FTK report that was given a year before the trial even started with this evidence list that shows that his computer was added. There's five, four references, five references to it was added in December of 2009. Wouldn't that alert counsel that gee, maybe somebody's looking at this computer? So the answer to that is I urge you to take a look at it if you haven't already. That evidence list is at 8402. And the honest answer, Your Honor, is I'm not so sure that that does alert anyone that someone's looking at it. What that says, even if you can understand the gobbledygook, is that the computer was divided into five portions and each of them was added to the FTK access data system that was going to prepare the computer for a forensic image. That doesn't tell you that Agent Kelly had been running searches. We don't find out that Agent Kelly had been running specific searches on that computer before the warrant until after this court remands and we get FTK log one and two. What about the JANXAC material? There's an entry in the communications log for 12-209 that they were examining a laptop, a laptop of Special Agent Kelly. There is. There's a cryptic entry that says that Special Agent Kelly started his review of the laptop in the 3500 material. And I would submit to the court that this is where Judge Sweet erred. Judge Sweet looked at this case backwards with the benefit of hindsight and said you could take that piece of 3500 material and you could take the FTK report and you know what, Mr. Nayar could have figured this out. And if he had figured it out, he could have filed a suppression motion. And I would suggest that that's not the standard. Let me do one that doesn't, I think, take so many steps, which is as I understand it, in 2011 there was a conversation about how the discovery would have been produced and that conversation involved whether or not the hard drive which had been provided from the defense could in fact be loaded up or whether or not it needed to be held to the side because of the possibility of some child pornography. If that conversation, which I understand I think occurred with the defense, wouldn't that have alerted them that somebody had to have looked at the content of the computer? Not necessarily, Your Honor, because at that point we're now way past the time that a search warrant has been executed. And so, sure, they knew that someone at the government had looked at the computer, but someone at the government was supposed to have looked at the computer. It was a year after a search warrant had been executed. It makes perfect sense, or six months, I forget the exact dates, that someone would have looked at it. The question is whether Neyar was on notice that someone had looked at it earlier. And no one told him that the reason they thought there might be an issue with child porn on that computer was because of a pre-warrant search. So the answer, frankly, Your Honor, is no. I see my time is up, but I am happy to continue answering questions. Why don't you, you have two minutes for a bottle. We'll hear from the government. Thank you. May it please the Court, my name is Sean Buckley. I represent the government here on appeal, and I represented the government in connection with the proceedings before the district court. The judgment of conviction in this case should be affirmed. As the factual record that was adduced during the limited remand makes clear, Judge Sweet properly denied the defendant's trial suppression motion for a number of reasons. First, the district court correctly applied the independent source doctrine. All of the computer evidence on which the government relied at trial was obtained pursuant to a court authorized search of the computer at issue. There is no dispute that the application for that search warrant did not rely at all on any information obtained during the brief. How do you respond to the argument that the triggering event, the event that caused the government to seek the warrant, were the suspected pornographic images which were only seen because of the search before the warrant? I would respond by referring the Court first to the The two prongs of the independent source doctrine are designed to combat are the so-called confirmatory search, or as the Court in Murray stated, search first, get a warrant later. The purpose of the second prong of the independent source doctrine is to ensure that the factual basis for the search warrant is truly independent of any information that is gleaned in the course of the warrantless search. And because of that, it is not a but-for analysis. The Supreme Court has made this clear repeatedly in Nix and Wong-Sum. The issue is whether, putting aside the question of the warrantless search, the government would have had a desire to search the premises that were the subject of the warrantless search. Is it that point in time? Do you go to a point and say hypothetically in life we would have gotten a search warrant had we known, or do you look at what actually motivated the obtaining the search warrant here? And if one looks at motivation and what the factual record is, are you led to the fact that there had been information provided which then led them to you, which then led them to the search warrant? Certainly, Judge. And that, the second of those two scenarios that Your Honor just posited, that would be but-for causation. And that scenario necessarily would swallow the independent source doctrine whole. And that is why the test as set forth in Murray and as also clarified by this Court in Nix is clear, that it is not the but-for causation that is at issue. It is whether, absent the illegal search, law enforcement would have had a desire to search the subject premises, to apply for a warrant of the subject premises. When you look at it from that angle, the question of what or the fact that they encountered something that caused them to reach out to the prosecutors. It is the question of what prompted the decision to seek a search warrant here were questions relating to the FBI's, the validity of the FBI's legal authority to have conducted the search in the first place. Nothing about the warrantless search influenced their desire to search it, their decision to search it. But the reason a search warrant was obtained was because of an expressed concern about the validity of the consent to search. So, under those facts, the decision in Johnson is controlling. Here, the concerns about the legal authority for the warrantless search were raised by the prosecutor. In Johnson, you once again had a warrantless search and the concerns about the validity of the authorities under which that warrantless search occurred were raised by the judge. But in both instances, there was a triggering event that was based solely upon concerns about the validity underlying the, or the validity of the authority used to search. Would anything in your analysis change if the subject matter that had been reviewed which caused the initial communication between, I guess it was Agent Kelly and you, would it change if it hadn't been child pornography but had been arms related? No, Your Honor, because the issue was, as the parties have stipulated and as the District Court noted, the entire reason that Agent Kelly was searching the computer was to try to find evidence, arms related evidence, evidence that related to materials that had been obtained in the course of the investigation, specifically night vision goggles and a printout about certain firearms. And that is how you know that nothing about what was uncovered in the course of the warrantless search is what actually prompted the decision to obtain a search warrant. The agents, similar to the agents in Johnson, fully intended and had ample probable cause and they had adequate authorities to search it. And under the Supreme Court's decisions in Nick, Nix, and Wong's son, that alone is not sufficient to give rise to suppression. Can you talk about waiver too? The first is the disclosure of the FTK report a year before the trial. Was that material so opaque that counsel would not recognize the earlier search? And then what about the Genksak materials too? Certainly, Judge. With respect to the March 2011 disclosure of the FTK report, the government submits that there is nothing opaque about what is contained on the face of that report. We laid out that it was, I believe, the third entry on the FTK report that provided an indication that something was done to the computer as early as December of 2009. That report was disclosed to the defense, not just in March 2011, but then again on March 4th, 2012, it was reproduced at the request of defense counsel to the defense. And on March 4th, 2012, more than two weeks prior to trial, defense counsel indicated or confirmed in writing that he was now able to review the contents of the FTK report. When those facts are combined with the disclosures in the Genksak materials, which, as we noted in our brief, were a very limited set of materials that stated unambiguously that the computer was processed and a search was of trial, those are more than sufficient to establish a basis for the district court's finding of waiver. So if the motion to suppress had been filed the day after the Genksak material was produced, would that have been timely? I think they would have had a more powerful argument that there was good faith or a good reason not to bring it sooner, but I think that it still would have been perfectly acceptable for the district court to find that waiver had occurred under Rule 12, given that pretrial motions to suppress had been due months prior, and that the underlying materials themselves, which again indicated that the search had been commenced in prior to the commencement of trial. When you combine those facts with the fact that the defense waited until not just the testimony of the cart agent, but until after the testimony of the cart agent had concluded to raise their motion with the district court, the district court, it's a sound exercise of its discretion to find that such delay rendered their motion untimely and therefore waived their motion. In addition to the waiver argument and the independent source doctrine, the facts that have been adduced at the hearing before the district court below also support an alternative theory under which to uphold the district court's denial of the motion to suppress, and that is under a theory of apparent authority. The facts below establish that the FBI, when it entered the apartment, identified the wife of the defendant who resided in the apartment. She identified herself as the defendant's wife to the FBI. The fact that the computer was recovered from a common area of the apartment to which the wife herself had access, and that the wife identified the computer, provided the password, and signed a consent-to-search form that specifically provided that she owned, possessed, controlled, and or have access to that computer. When all of those facts are considered together, it is clear that they would warrant a man of reasonable caution in the belief that the consenting party, the wife, had access or authority over the computer. I see my time has expired. One last question. Back on the waiver question, what is our standard of review on waiver? It's a de novo review because it's . . . well, a de novo review of the legal conclusion about the fact of the waiver, but as far as Judge Sweet's factual findings about when certain things were provided or could have been learned, it's clear error. Thank you. We'll hear the rebuttal. The answer to the question about the Johnson test and whether it's what actually prompted the decision or whether it's some hypothetical reconstruction of what maybe would have, could have, should have happened, the answer is it's what actually prompted the decision. That's what the Johnson court said. The precise language is the decision to seek the warrant may not be prompted by information gleaned from the illegal conduct. Now, that is not the same as Mr. Buckley does. But is there . . . did the request result from information gleaned from the illegal conduct? It did. It did, Your Honor. Look at the way the chronology develops. The agent sees what he thinks is child pornography, and he calls Agent Buckley, and that's what sets it in motion. And I'll address this argument about but-for causation. That is different, Your Honor, than the first prong of Johnson, which is did the information viewed during the initial illegal surge make its way into the warrant? That's the first prong, and I concede that we cannot meet that first prong. The second prong is different, and it goes to the motivation and what actually prompted the decision. And there's no answer here. This case is factually very different than Johnson. In Johnson, the decision to get the warrant was in no way prompted by the process of reviewing the materials themselves. They had long since reviewed all the tapes, and then Sua Sponti, the district court, said, wait, you're introducing these tapes. Don't you think you should have a search warrant for that? And they go and get a search warrant. That is not what happens here. In explaining the second prong, I mean, the court says the relevant question is whether the warrant would have been sought even if what actually happened had not occurred. So we're in this trying to figure out what would have happened. But for the belief that they had consent, the government would have asked for a warrant and undoubtedly would have gotten it. Well, first of all, Your Honor, we don't know that. That is not part of the record. We don't have any agent who testified to that. We don't have any agent who said they had a plan in place to get a search warrant. Well, you acknowledged earlier that there was probable cause. That's true, but that's different. If we're in the hypothetical world of what motivated people to do anything, the easiest thing to do is to look at what they actually did and why they did it. Your Honor is assuming what they might have done if they had not gotten consent, and we just don't know that. There is no agent who has said that that is what he would have done. And in fact, the evidence doesn't really suggest that they did. They didn't immediately search this computer after they got it. They collected it. It sat there. Then they started processing it. They reviewed it. We don't know that they would have bothered getting a search warrant. As the court is well aware, it's very common when agents discover a laptop in the course of an arrest or a search, you have a search warrant that night. That's not what happened here. We don't know what they would have done had they not assumed that they had valid consent without probing whether the person giving them consent had any authority to do that. I see my time is up. I was intended to further address the waiver issue, but I leave that to the court. Could you take another minute? Sure. I will be very brief. I wanted to be clear about the FTK report because to make life easier for the court, we've only included the relevant segments in the appendix. But the FTK report itself was a disk. It contained a forensic record of the initial things that Agent Hunter had done in readying the computer for its forensic search. It did not contain anything that Agent Kelly had done. And it also contained a complete forensic image of the computer. So we're not talking about just that one page that we're focused on now that's in the appendix. We're talking about something very voluminous. When you combine that with what 402, what the evidence list actually says, which is simply that certain portions of the computer were added to the program, it did not sufficiently put him on notice. The only other thing I would say about waiver is one thing that nobody has said out loud, but which should be said, is there's no question that the defense did not know of the basis for this motion. Whether perhaps they had a reasonable excuse or not, we're debating about for not making the motion sooner. But the fact is they didn't know, and they made the motion as soon as they knew the basis. And this Court should not just deprive them of the ability to raise these issues. These are serious issues, and they should be explored. Thank you. Thank you. We'll reserve decision. That concludes our calendar for this afternoon. The Court stands adjourned.